UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

PRESTON PORTIS,

                      Plaintiff,                          Case No. 1:07-cv-970

v.                                            Honorable Janet T. Neff

PATRICIA L. CARUSO et al.,

                      Defendants.

_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff is currently incarcerated at Ionia Maximum Correctional Facility (MSP), but it appears that the majority of the events underlying his complaint occurred at Richard A. Handlon Correctional Facility (MTU).  In his *pro se* complaint, he sues Michigan Department of Corrections Director Patricia L. Caruso, Administrative Staff James Armstrong, Julie Van Setters Step II Medical Respondent, Region 2 Medical Director Doctor Haresh Pandya, MTU employees Physician's Assistants (unknown) Borgess and Donna Rohrs, registered Nurses Sherry Rowland and Sherri Gregurek, and MSP employee Bryan Deeren.

On June 30, 2006, Plaintiff injured his fifth digit (pinky finger) on his right hand when it was struck by a softball.  (Compl. at 5.)[1]  That day Plaintiff sought and received medical care from Registered Nurse Julie Flecher at MTU and she ordered Plaintiff to be sent to the emergency room. He waited approximately one hour while another prisoner was being evaluated to determine if he also needed transport to the emergency room.  (*Id.*)  Plaintiff received a "boxing glove type splint." (*Id.* at 6.)  When Plaintiff returned to MTU, Plaintiff asserts that Defendant Gregurek was given the instructions from the emergency room to remove the splint twenty-four hours later. Plaintiff asserts that the splint was left on for seven days and no one monitored the circulation.  Plaintiff asserts that his requests to have the splint removed were ignored because there was no physician at MTU.  (*Id.*)

On July 7, 2006, Defendant Rowland removed the splint without assistance from a physician.  Plaintiff's hand was then examined by Defendant Borgess, and Plaintiff received a straight splint.  (*Id.* at 6-7.)  Plaintiff was instructed to continue to wear the splint until July 20, 2006.

---

[1]The Court will use the page number assigned by CM/ECF for ease and clarity.

Plaintiff saw Defendant Rowland at that time and the splint was removed.  Plaintiff asserts that he asked to continue to wear the splint because of his "inability to flex [his] finger, extreme pain, and obvious swelling in the PIP joint." (*Id.* at 7.)  Plaintiff was told to continue using a warm compress and flexing exercises.  Plaintiff received another appointment five weeks later on August 28, 2006.  At that time there was still swelling, so Plaintiff was ordered to receive x-rays on August 31, 2006.  Those x-rays showed a "tiny fracture (Avulsion fracture)", but no further treatment was received. (*Id.* at 8.)  Plaintiff had another set of x-rays taken a month later on September 29, 2006, which showed the same fracture.  Plaintiff was then given an appointment with a specialist at the Michigan Hand Center on November 13, 2006.  Plaintiff asserts that he was not given calcium carbonate at that time, although recommended by the specialist, because the fracture was "too old." (*Id.* at 9.)

Plaintiff alleges that he was then transferred from MSP to MTU in retaliation for filing two grievances regarding the medical care he was receiving.  (*Id.* at 10-11.)  Plaintiff had a third set of x-rays taken on December 21, 2006, and the fracture could not be located.[2]  On January 8, 2007, Plaintiff was sent to the Michigan Hand Center to be fitted for a new splint.  Plaintiff lost the splint when it was stolen while he was taking a shower on January 17, 2006.  Plaintiff sent a kite requesting a new splint on February 2, 2007 and was sent to the Michigan Hand Center, again, on February 13, 2007 to be fitted for a new splint.  At that time he was placed in a cast, which had to be removed on February 27, 2007 because it was "cutting off the circulation in [his] finger." (*Id.* at 10.)  At that time, Plaintiff was issued a new finger splint to be worn at night time.  Plaintiff asserts that he was never sent back to the Michigan Hand Center despite being told that he would need to return in six weeks.  (*Id.* at 11.)

---

[2]It is unclear if these x-rays took place before or after he was transferred from MTU to MSP.

Plaintiff asserts that there was undue delay in taking him to the emergency room and removing the boxing glove type splint.  Plaintiff also asserts that Defendants were grossly negligent by not providing him appropriate medical care.  Plaintiff also asserts that he was transferred from MTU to MSP in retaliation for filing two grievances regarding his medical care.  Plaintiff seeks an award of $300,000.00 in "punitive, compansatory, [sic] and monetary damages. For the loss of the use of [his] fifth digit finger, and permanent damage to [his] fifth digit finger, due to the actions of the named [D]efendants."  (*Id.* at 14.)

II.     Failure to state a claim

 A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Medical Care**

Plaintiff asserts that he was not given appropriate medical care by Defendants for his pinky finger of his right hand after it was struck by a softball.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated

- 4 -

individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

- 5 -

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5n; *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000

WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Plaintiff's claim arising from the one-hour delay in taking him to the emergency room fails to meet the objective component of an Eighth Amendment claim. The Eighth Amendment objective standard is satisfied only when "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). In other words, the condition of confinement must be one that society "chooses not to tolerate." *Id.* A one-hour delay in receiving medical treatment for a fractured finger falls far short of this objective standard. Many free citizens must endure much longer waits for medical treatment in crowded emergency rooms or in rural areas remote from ambulance service.

Plaintiff has failed to allege the subjective component of an Eighth Amendment violation because he fails to show that Defendants were deliberately indifferent to his medical need. As is evident from Plaintiff's complaint, he received continuing medical care for his finger including multiple x-rays, splints, and appointments with specialists commencing an hour after he reported the injury and continuing over eight months. Therefore, Plaintiff fails to state a violation of his Eighth Amendment rights.

### B.      Retaliation Claim

Plaintiff asserts that he was transferred from MTU to MSP in retaliation for filing two grievances regarding his medical care. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394

(6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).  Plaintiff, however, cannot meet the second prong of the *Thaddeus-X* test.  As the Sixth Circuit explained in *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274.  "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer

from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted).  If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007).

It appears that Plaintiff's transfer was from one level II facility to another level II facility.  Plaintiff has no constitutional right to remain at a specific facility or to prevent a transfer to another level II facility for a permissible reason. *Ward*, 58 F.3d at 274.  Plaintiff does not allege that his access to the courts was compromised as a result of the transfer; he only makes a vague allegation that there was a disruption in his medical care.  However, Plaintiff further states that he received a third set of x-rays, a new splint and given another appointment at the Michigan Hand Center shortly after his transfer to MSP.  (Compl. at 10.)  It is impossible to conclude that a transfer from one level II prison to another would deter a person of ordinary firmness.  Therefore, the transfer is insufficient to constitute an adverse action, and Plaintiff fails to state a claim for retaliation.

### C.    State Law Claims

Plaintiff claims that Defendants were grossly negligent by failing to provide him with appropriate medical care.  Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir.

1994).  To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction.  The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances.  *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993);  *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998).  This claim will be dismissed without prejudice.

## Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

Dated:   November 19, 2007                     /s/  Joseph G. Scoville
                                               United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).